NEWLAND, Admr., Appellee,

v.

AMIN, Appellant, et al.

[Cite as *Newland v. Amin* (1991), 75 Ohio App.3d 616.]

Court of Appeals of Ohio,
Allen County.

No. 1–90–114.

Decided Aug. 19, 1991.

*Williams, Jilek & Lafferty Co., L.P.A.*, and *Thomas W. Gallagher*, for appellant.

*James E. Brazeau*, for appellee, Robert Curry.

*Peter R. Casey*, for appellee, Shama A. Amin.

*Michael J. Malone*, for appellee, Lima Memorial Hospital.

---

THOMAS F. BRYANT, Presiding Judge.

This is an appeal from a decision entered in the Common Pleas Court of Allen County, granting summary judgment in favor of the defendant-appellee, Robert I. Curry, M.D. and dismissing plaintiff's complaint against him.

In December 1987, because seven-year-old Shawn Newland was overweight, the Newlands' family physician, Robert I. Curry, M.D., tested him for suspected diabetes. Dr. Curry performed a chemical strip test in his office to determine Shawn's blood sugar. The result of this test indicated a normal blood sugar level. Still suspecting diabetes, Dr. Curry ordered a five-hour glucose tolerance test ("GTT"). The result of that test was also normal.

On October 18, 1988, Shawn, then eight years old, was taken by his mother to see Dr. Curry. He was complaining of stomach pain, vomiting, headaches and nocturia, and had been experiencing these symptoms four to five days prior to this visit. It is apparently undisputed that Dr. Curry at this time considered the likelihood of Shawn's having diabetes and referred to the GTT done in December 1987, but, noting that that test had been normal, considered it to still be valid. Dr. Curry ordered some blood work, but did not order a new chemical strip or GTT. The blood work ordered was not for the purpose of determining whether Shawn had diabetes.

On Monday, October 24, 1988, Shawn's condition had worsened and he returned to Dr. Curry. Between the October 18 visit and the October 24 visit, Shawn had lost approximately seven and one-half pounds. He had symptoms of tongue dehydration and had been vomiting frequently over the weekend. Dr. Curry hospitalized Shawn at Lima Memorial Hospital that afternoon.

During the course of blood work done routinely on all patients admitted to the hospital, it was determined that Shawn had diabetes. These tests further revealed that his diabetes had progressed to diabetic ketoacidosis. The nursing personnel contacted Dr. Curry and suggested that he obtain the services of a pediatric endocrinologist. Dr. Curry then contacted Shama Amin, M.D., a pediatric endocrinologist. Dr. Amin accepted Shawn as a patient.

Shawn was admitted to Lima Memorial Hospital at 3:30 p.m. on October 24, 1988, and the blood test results indicating diabetes and diabetic ketoacidosis were available at 5:00 p.m. that day. Dr. Amin, when informed of the results of the blood tests, issued her orders. Dr. Amin relied upon the nursing personnel to monitor Shawn's condition and to keep her informed. Dr. Amin did not believe it necessary to visit Shawn in the hospital at the time she accepted him as a patient.

At 7:40 p.m. on October 24, 1988, Shawn lapsed into a diabetic coma resulting from cerebral edema. From 7:40 to 9:20, the cerebral edema progressed to brain stem herniation. Dr. Amin arrived at the hospital at 9:35 p.m. after an emergency code called at 9:23 p.m. Shawn was transferred to Toledo Hospital at 2:15 a.m. on October 25, 1988, and died there later that day.

The administrator of Shawn's estate brought suit against Dr. Amin for allegedly failing to treat Shawn's diabetic ketoacidosis properly, allowing it to progress, and against Lima Memorial Hospital for its alleged failure to keep Dr. Amin properly informed about Shawn's deteriorating condition.[1] As a result of Dr. Amin's deposition testimony taken by the plaintiff November 21, 1989, the plaintiff concluded that Dr. Curry had been negligent by failing to diagnose Shawn's diabetes. Plaintiff joined Dr. Curry as a party defendant by amended complaint November 30, 1989.

On August 28, 1990, defendant-appellee Dr. Curry filed a motion for summary judgment, which was granted on September 13, 1990. The plaintiff now appeals the trial court's decision and asserts the following assignment of error:

---

1. The claims against Dr. Amin and Lima Memorial Hospital were settled and are not at issue in this appeal.

"The trial court erred in granting summary judgment as a genuine issue of material fact exists with regard to the negligence of the defendant-appellee and reasonable minds can clearly reach more than one conclusion regarding said negligence."

Summary judgment should not be granted unless it appears from the evidence and supporting affidavits that reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion is made. In reviewing a motion for summary judgment, the evidence is to be construed most strongly in favor of the opposing party. See Civ.R. 56(C).

■ The plaintiff based his claim against Dr. Curry on Dr. Amin's deposition testimony given November 21, 1989. In that deposition, Dr. Amin testified that she believed Dr. Curry had departed from accepted standards of medical care when he referred Shawn to her without providing adequate information concerning the patient's medical history. Dr. Amin further testified that Dr. Curry failed to prevent diabetic ketoacidosis at a time when it was preventable and that if Shawn had been treated for diabetes, he would not have developed diabetic ketoacidosis or the ensuing cerebral edema and would not have died (at that time of those causes).

To support his motion for summary judgment, Dr. Curry filed Dr. Amin's affidavit in which she stated that, at the time Shawn was referred to her care, she had all the information necessary to properly treat him. She further stated in her affidavit that, based upon her review of Dr. Curry's records and his deposition taken in this case, she believed that Dr. Curry's care and treatment of Shawn was, to a reasonable degree of medical certainty, within accepted standards of medical care. Dr. Amin further stated in her affidavit that Dr. Curry's records and deposition were not available for her review prior to her own November 1989 deposition.

■ The testimony of Dr. Amin as set forth in her affidavit is inconsistent with her deposition testimony. It has been held in Ohio that "a deposition taken prior to the joinder of a party, containing sworn statements of the deponent based upon personal knowledge, may be considered as an affidavit in opposition to a motion for summary judgment as long as the deponent is presently available to testify at trial." *Napier v. Brown* (1985), 24 Ohio App.3d 12, 15, 24 OBR 33, 37, 492 N.E.2d 847, 851.

In the *Napier* case, defendant Brown had testified by deposition that he had purchased beer from Wilmot on the afternoon of the accident which was the subject matter of the litigation. Based upon this statement, the plaintiff filed an amended complaint naming Wilmot as a defendant. After Brown was

dismissed from the case, a second deposition was taken, in which he denied purchasing beer, which testimony was contradictory to his testimony during the first deposition. The court held that these conflicting depositions clearly evidenced a genuine issue of material fact. *Id.*

In the present case, Dr. Curry relied on the affidavit of Dr. Amin in support of his motion for summary judgment. The plaintiff relied on the testimony contained in Dr. Amin's deposition in support of his memorandum in response to Dr. Curry's motion for summary judgment. As in *Napier*, the deposition and affidavit of Dr. Amin present contradictory evidence and, as such, create a genuine issue of material fact. It was, therefore, error for the trial court to grant summary judgment in favor of Dr. Curry.

Civ.R. 56(C) provides that, in reviewing a motion for summary judgment, a trial court may consider the following:

"[P]leading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, *timely filed in the action * * *. * * * No evidence or stipulation may be considered except as stated in this rule.*" (Emphasis added.)

The trial court rejected Dr. Amin's deposition testimony offered by plaintiff to establish her professional opinion about Dr. Curry's negligent conduct of Shawn's medical case because her testimony in that regard was not expressed in terms of "reasonable medical certainty." Dr. Amin's deposition was given upon cross-examination by plaintiff at a time when she was a party defendant to this action. Her cross-examiner's questions were posed in terms to elicit her agreement that specific suggestions about Dr. Curry's acts or omissions in the conduct and referral of Shawn's medical care were "more likely than not" to fall short of the required medical standard of care.

Our review of the questions asked and the answers given in context discloses their reference to be that required to establish probability or the preponderance of evidence. Cf. *State v. Boston* (Mar. 2, 1988), Summit App. No. 13107, unreported, 1988 WL 26184.

On the other hand, the trial court accepted and relied upon Dr. Amin's testimony by affidavit offered by defendant Dr. Curry to establish his compliance with acceptable medical standards in caring for Shawn and referring his case to Dr. Amin.

Dr. Amin's affidavit recites that the opinions it contains are based on the affiant's review of Dr. Curry's deposition testimony and his medical records apparently identified by that deposition testimony. Examination of the record reveals that neither Dr. Curry's deposition nor his medical records are filed in

the case. Thus the basis for Dr. Amin's changed testimony was not before the court for consideration in evaluating Dr. Amin's affidavit, nor is it before this court on appeal.

Therefore, the trial court in assessing the evidence before it on a motion for summary judgment disregarded evidence tending to establish plaintiff's thesis of Dr. Curry's malpractice or medical negligence rather than viewing that evidence indulgently for plaintiff, while finding that reasonable minds could not differ about accepting as conclusive Dr. Amin's changed opinion offered without basis for evaluation of the reasons for that affiant's changed view. In so doing, the trial court misapplied the standard for summary judgment established by Civ.R. 56 and thereby erred to appellant's prejudice.

Accordingly, the judgment of the Common Pleas Court of Allen County is reversed and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SHAW and HADLEY, JJ., concur.